[L. A. No. 15775. In Bank.—May 25, 1938.]

In the Matter of the BANK OF SAN PEDRO (a Banking Corporation), in Liquidation. FRIEND W. RICHARDSON, as Superintendent of Banks, etc., Appellant, v. ROY P. HARPER, Respondent.

Clock, McWhinney & Clock, Merritt D. Jergens and John G. Clock for Appellant.

Sullivan, Roche & Johnson, as *Amici Curiae,* on Behalf of Appellant.

Loucks & Phister for Respondent.

THE COURT.—For the reason that with respect to the issue herein involved, in similar situations, a diversity of opinion appeared as between or among several respective jurisdictions, a hearing of the appeal in the instant case was ordered to be had in this court, after decision of the original appeal by the District Court of Appeal. After careful consideration of the facts of the case and the law applicable thereto, this court is satisfied with, and hereby adopts as its own, the opinion and decision that was prepared by Mr. Justice Sturtevant of the Second Division of the District Court of Appeal, First District. It is as follows:

"This is an appeal from an order authorizing and directing Friend W. Richardson, as superintendent of banks, to allow a set-off on and to accept payment of the balance due and owing on a promissory note held by an insolvent bank now being liquidated by said superintendent.

"The order was made and based on an agreed statement of facts. Heretofore the Bank of San Pedro was organized to conduct and was conducting a banking business consisting of a commercial department, and a savings department under the Bank Act. (Act No. 652, Deering's General Laws.) The petitioner, Roy P. Harper, borrowed from the commercial department several thousand dollars on a collateral note secured by certificates of shares of prior preferred stock of the Van Camp Sea Food Company. About the same time he opened a savings account in the savings department of said bank. Large sums having been paid on the note, later a new

collateral note was executed. On March 15, 1933, the superintendent of banks took possession of said bank, and, through a receiver now holds possession. On May 20, 1933, said petitioner Roy P. Harper owed said bank on his note for said loan $5,225, and the bank held collateral as security which was of the value of $9,000 or more. At the same time the savings department of said bank owed to said Roy P. Harper on said savings account $3,967.69. On said date last mentioned, said Roy P. Harper demanded that the bank apply on his note the balance in the savings account, tendered to the bank the balance due on said note after such credit had been allowed, and demanded the return to him of his note and the collateral so held by said bank. The demand and tender were both refused and thereafter he filed a petition in the insolvency proceeding pending in the superior court praying for the order hereinabove mentioned.

"In presenting his appeal the superintendent of banks says: 'There is but a single question involved: whether or not a depositor in the savings department of a state bank in liquidation may set off his deposit against a loan in the commercial department of said bank.' The petitioner says: 'It is better stated thus: Does the Bank Act specifically forbid the interdepartmental offset of a savings deposit against a debt owed by the savings depositor to the commercial department in determining the assets and investments of an insolvent bank?'

"The present Bank Act was approved March 1, 1909. (Stats. 1909, p. 87.) Prior to its enactment it had been decided that the contention which the petitioner now makes was legally sound as the law then stood. (*People* v. *California etc. Trust Co.*, 168 Cal. 241 [141 Pac. 1181, L. R. A. 1915A, 299].) The question is therefore reduced to an inquiry whether anything contained in the Bank Act has changed the rule of law declared in the case cited. An examination of the decision cited, and kindred decisions, discloses that each rested on the provisions of sections 438 and 440 of the Code of Civil Procedure. The question is therefore further limited as to whether the present Bank Act has any provisions which in any respect work a repeal of said sections. A comparison of said sections with the numerous provisions of the Bank Act shows no conflict whatever. No express repeal is even suggested. Repeals by implication are

not favored and the Bank Act contains no words to the effect that proceedings thereunder are an exception to the general laws governing the rules of procedure.

"The appellant calls to our attention the facts that the Bank of San Pedro was organized into departments; that the petitioner owed the commercial department; that it was the savings department which owed petitioner; and, he contends there could be no set-off. That contention is but to assert that there was no mutuality. But mutuality is not always controlling. In the instant case it was not controlling. The day before the Bank of San Pedro was taken over by the appellant, if either the petitioner had sued the bank, or the bank had sued the petitioner, it is clear that the other could have set off his or its claim. The same condition existed in *People* v. *California etc. Trust Co., supra.* Speaking to the point, on page 249 the court said: 'We can perceive no reason why the principles of the decisions cited should not be applied to the demands here. We think it should, and that notwithstanding the respective demands are not mutual, still that, if any proceeding in the estate had been taken by the bank to collect its allowed claim prior to its insolvency, or the administrator had theretofore sued to collect the estate funds on deposit with it, the estate being solvent, the demand of one party would have been available as a set-off against the claim of the other; that the rights of the parties in that respect were reciprocal, and, as we have said, the insolvency of the bank did not affect the right of either to have this subsequently done.' So, here, for precisely the same reasons the insolvency of the Bank of San Pedro did not affect the right of set-off existing in either party.

"The appellant cites and relies on the provisions of sections 25, 26 and 27 of the Bank Act as establishing the rule for which he contends. We think they do not do so. ■ The primary purpose in enacting the Bank Act was to protect the public. To that end, as restrictions on the officials of the bank, while it was a going concern, said sections were enacted. But neither the primary purpose in enacting said act, the history of the times, nor any other reason suggested in the briefs called for provisions taking from any single customer of the bank any of his former statutory rights such as those expressed in sections 438 and 440 of the Code of Civil Procedure. We find no language in said act which purports to do

so.   The petitioner cites and relies on *Greva* v. *Rainey,* 2 Cal. (2d) 338 [41 Pac. (2d) 328].   It is not in point, but all we have said we believe to be in accord with that decision.''

The order appealed from is affirmed.